## DREW vs. RICKS.

1. The person apprehending a runaway slave is entitled to the reward prescribed by the statute so soon as he carries him before a justice of the peace.

2. In an action against the owner to recover the reward prescribed by statute for apprehending and carrying a runaway slave before a justice, no previous demand need be proven.

Error to the County Court of Greene.

ERWIN, for plaintiff in error.

HALE, for defendant.

PARSONS, J.—The defendant in error brought his suit against the plaintiff, before a justice of the peace, to recover the reward allowed by law for apprehending a runaway slave, that belonged to the plaintiff in error. Upon this subject, it is enacted, that "All runaway slaves may be lawfully apprehended by any person, and carried before the next justice of the peace, who shall either commit them to the county jail, or send them to the owner, if known, who shall pay for every slave so taken up, the sum of six dollars to the person apprehending him or her, and also all reasonable costs and charges."—Clay's Dig. 541, § 14.

The defendant in error recovered a judgment for the six dollars before the justice of the peace, and the plaintiff in error, having appealed to the County Court of Greene, the defendant in error there recovered judgment for the same amount, upon which the plaintiff in error brought the cause here by writ of error. It appears by the bill of exceptions that the defendant in error, Ricks, did arrest the slave and take him before a justice, and that the slave belonged to Drew and had run away; also, that the justice ordered the slave to be committed, but that Ricks refused to take the slave to jail, to which the slave was committed, or to deliver him to his master; that the justice thereupon applied to one Toney to take charge of the slave and to take him to jail, or to his master. The justice,

3

on the trial in the County Court, testified that when he applied to Toney, he informed him of the refusal of Ricks to take charge of the slave, and told him that he should have the costs, or fees, allowed by law for doing so, but the witness could not say whether he intended to include the fee for apprehending the slave or not in what he said to Toney. This conversation was in the absence of Ricks. Toney testified that the justice, to induce him to take charge of the slave, told him that Ricks had forfeited his right to the fee of six dollars, by refusing to take charge of the slave, and if he, Toney, would take the slave to jail, or to his master, he should have this fee as well as the other costs and charges; that upon this he took the slave to his master's residence and delivered him to his son, and that afterwards the master, Mr. Drew, paid him the six dollars and also the costs. There was no evidence that Drew, at the time of this payment, was aware of the fact that Ricks had apprehended the slave. There was no evidence to show that Ricks ever assented to the payment to Toney, or that Ricks had ever demanded payment of Drew.

1. It is our construction of this statute, that the person apprehending a runaway slave becomes entitled to the reward of six dollars, so soon as he carries the slave before a justice of the peace. The rest becomes the official duty of the justice. Who is to commit the slave or to send him to his owner? It is the justice. And when this is done, the owner " shall pay for every slave so taken up, the sum of six dollars to the person apprehending him or her, and also all reasonable costs and charges." The sum of six dollars is to be paid to the person apprehending, and the owner is also to pay all reasonable costs and charges, but it is not said to whom they shall be paid. This omission was evidently designed, because it was intended that the costs and charges, exclusive of what the justice might charge, should be paid to the person rendering the further service, in conveying the slave to jail or to his master. This might be the person originally apprehending the slave, or it might be another person, but the person apprehending the slave could not forfeit the reward by declining the further service.

2. The next question arises out of the supposed necessity of a demand of the sum of six dollars before suit. This, we think, was not necessary. Mr. Drew was aware of the fact that his

runaway slave had been apprehended, but he paid the reward to the wrong person. This was at his peril. There are cases arising out of contracts, in which it is necessary to allege and prove a special request to pay or perform, but this in general is necessary only when it is proper as part of the contract to make the request, as if A. promise B. to deliver him two pipes of wine out of A.'s cellar, to be chosen by B., in such case B. must make the request.—3 Salk. 30S. There are cases also in which it has been held that the party claiming a payment must give notice of the happening of the event upon which the payment was to be made, as where the payment was to be made when the obligee should return from Hamburgh.—3 Salk. 247. There are several cases, however, directly contrary to this in Comyn's Digest, Pleader, (c. 75.) We do not find any authority to show the necessity of a special request or notice in such a case as this. As before remarked, Drew was aware of the apprehension of his slave before this suit was brought; and besides, his liability to pay was perfect, so soon as the slave was taken and delivered to the justice. The statute requires neither demand nor notice, and we cannot require them. Let the judgment be affirmed.